**Bidding Procedures for Trustee's Sale of the Interest of the Estate of Revolate Holdings LLC in Lipman JWalk Holding LLC**

1. These bidding procedures (the "Bidding Procedures") are promulgated in connection with the public sale (the "Public Sale") of any and all of the interest of the estate of Revolate Holdings LLC in Lipman JWalk Holding LLC ("Lipman JWalk").

2. The Public Sale for the estate's interest in Lipman JWalk shall be held on February 27, 2014 at 10:00 a.m. in Courtroom 610, at the United States Bankruptcy Court, One Bowling Green, New York, New York (registration begins at 9:30 a.m.).

3. The seller of the estate's interest in Lipman JWalk is Gregory Messer, Esq., as the Chapter 7 Trustee (the "Trustee") of the estate (the "Estate") of Revolate Holdings LLC (the "Debtor"), which Chapter 7 case is pending before the United States Bankruptcy Court for the Southern District of New York (the "Court") under jointly administered case number 13-13110 before the Honorable Cecelia G. Morris, Chief Bankruptcy Judge for the Southern District of New York. The sale of the Estate's interest in Lipman JWalk is being conducted pursuant to §§ 363(b) and (f) of Title 11 of the United States Code (the "Bankruptcy Code"), free and clear of liens claims and encumbrances (the "Liens"), if any, with the Liens to attach to the proceeds of the Public Sale, to the same extent, with the same validity and enforceability, and in the same priority under applicable law, but subject to higher and better offers, and in accordance with the Order of the Court.

4. The Trustee seeks to solicit offers for the sale of the Estate's right, title and interest in Lipman JWalk. After the Public Sale, the Trustee will determine, in his sole and absolute discretion, which bid is the highest or best offer for the interest in Lipman JWalk.

### THE PUBLIC SALE REQUIREMENTS

5. Any offer ("Offer") for the interest in Lipman JWalk must satisfy the following terms and conditions: (i) the offeror (the "Offeror") must agree to be bound by these Bidding Procedures; (ii) the Offer shall not be contingent upon the receipt of financing necessary to its consummation; (iii) the Offeror shall have demonstrated, to the sole satisfaction of the Trustee, evidence of its ability to conclude the transaction upon the terms and conditions of these Bidding Procedures, without delay; (iv) the Offer shall not be conditioned upon the outcome of unperformed due diligence by the Offeror with respect to Lipman JWalk; (v) a deposit in the sum of $10,000 has already been received by the Trustee from JWalk Holdings LLC (the "Stalking Horse Bidder") and the Stalking Horse Bidder has offered a total purchase price of $90,000.00 for the interest in Lipman JWalk, subject to higher or better offers at the Public Sale; (vi) on or before the commencement of the Public Sale, the Offeror must deliver a certified check or bank check in the amount of ten thousand dollars and 00/100 ($10,000.00) (the "Qualifying Deposit") payable to "Gregory Messer, Esq., as Trustee" in order to be permitted to bid on the interest in Lipman JWalk. The Qualifying Deposit shall serve as a partial good faith deposit against payment of the purchase price by such competing bidder as the Trustee determines to have made the highest or best bid for the interest in Lipman JWalk. The Trustee reserves the right to reject any Offeror, who the Trustee, in his sole and absolute discretion, believes is not financially

1

capable of consummating the purchase of the interest in Lipman JWalk.

### STALKING HORSE RIGHTS

6. In accordance with the Order of the Court dated February ___, 2014 authorizing and approving the sale of the interest in Lipman JWalk, the Trustee has granted certain bidding protections to the Stalking Horse Bidder. The opening bid by the Stalking Horse Bidder shall be at least $90,000.00 for the interest in Lipman JWalk (the "Initial Bid"), and the bid by any competing Offeror for the interest in Lipman JWalk at the Public Sale shall be at least $10,000.00 more than the Initial Bid with bidding increments thereafter being $5,000.00 per bid or such other amount as the Trustee, in his sole discretion, deems appropriate.

### OBLIGATIONS OF THE SUCCESSFUL BIDDER(S)

7. At the conclusion of the Public Sale, after the Trustee has determined which bidder is the successful bidder (the "Successful Bidder"), the Trustee, or his representative, will return the Qualifying Deposits to all other bidders, except for the second highest bidder (the "Second Highest Bidder"). The Second Highest Bidder's Qualifying Deposit shall be returned once the Successful Bidder posts the required ten percent (10%) of its successful bid as provided in these Bidding Procedures. The Successful Bidder shall: (a) deliver to the Trustee a bank check, payable to "Gregory Messer, Esq., as Chapter 7 Trustee", in an amount of at least 10% of the bid price minus the Qualifying Deposit (collectively with the Qualifying Deposit the "Deposit") within two (2) business days of the Public Sale; and (b) pay the balance of the purchase price (that being defined as the difference between the successful bid and the Deposit) (the "Purchase Price") for the interest in Lipman JWalk to the Trustee by bank check, federal funds or wire transfer at the closing of title to the interest in Lipman JWalk. The Successful Bidder must close title to the interest in Lipman JWalk not later than March 20, 2014 (the "Closing"). The Trustee, in his sole discretion, can extend the Closing. The Closing will be held at a location to be determined upon notice to interested parties. The Successful Bidder shall pay any transfer taxes incurred by the transfer of the interest in Lipman JWalk by the Estate at the Closing.

8. Subsequent to the Public Sale, the Trustee will seek the entry of an Order of the Court confirming the sale of the interest of Lipman JWalk to the Successful Bidder.

9. The Successful Bidder shall be obligated to purchase the interest in Lipman JWalk and close title to such interest. There is no contingency of any kind or nature that will permit the Successful Bidder to withdraw its bid, cancel these Bidding Procedures and receive a return of the Deposit other than the Trustee's inability to deliver the interest in Lipman JWalk on or before March 20, 2014. Anything to the contrary contained in these Bidding Procedures notwithstanding, the Trustee shall have the right in his sole and absolute option to adjourn the Closing in order to remedy any defect in connection with the interest of Lipman JWalk. In connection with the Closing, the Successful Bidder is hereby given notice that **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER. The failure to close for any reason whatsoever (except the Trustee's inability to deliver the interest in Lipman JWalk), including, the failure to pay the balance of the Purchase Price on the date of the Closing**

2

**will result in the Trustee retaining the Deposit as liquidated damages, and the termination of the Successful Bidder's right to acquire the Estate's interest in Lipman JWalk, and any and all other remedies that the Trustee may have**. In the event the Successful Bidder fails to pay the balance of the Purchase Price on the date of the Closing or otherwise perform its obligations under these Bidding Procedures, the Successful Bidder will also be responsible for, and charged with, the Trustee's legal fees and expenses in connection with the Successful Bidder's default and the enforcement of these Bidding Procedures. The Successful Bidder will have no recourse to any other property or assets of the Trustee or the Estate or any related estate under these jointly administered cases, which will be exempt from levy, execution or other enforcement procedure for the satisfaction of Successful Bidder's remedies. The provisions of this section will survive these Bidding Procedures or the Closing. Expenses incurred by the Successful Bidder, or any other competing bidder, concerning any due diligence, shall be the sole responsibility of such bidder, and under no circumstances shall the Trustee or the Estate or the Trustee's professionals be responsible for, or pay, such expenses.

10. In the event that the Successful Bidder for the interest in Lipman JWalk fails to: (a) tender the payment of the balance of the Purchase Price at the Closing; or (b) otherwise perform any of its obligations under these Bidding Procedures, the Trustee, at his sole option, shall be authorized to sell the interest in Lipman JWalk to the Second Highest Bidder without any further notice and without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems appropriate. Should the Second Highest Bidder fail to close on the interest in Lipman JWalk within such time as the parties may agree, but not to exceed thirty (30) days after notice from the Trustee to the Second Highest Bidder, the Trustee shall be authorized to sell the interest in Lipman JWalk to the next highest or best bidder, without the necessity of any further notice. All Offerors will be bound by these Bidding Procedures.

11. The Trustee or the Trustee's professionals have not made, and do not make, any representations, except as stated in these Bidding Procedures, as to any matter or thing affecting or related to the Estate's interest in Lipman JWalk or this Public Sale, which might be pertinent to the purchase of the interest in Lipman JWalk. Each Offeror hereby expressly agrees and acknowledges that no other such representations have been made. The Trustee is not liable or bound in any manner by any other expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Estate's interest in Lipman JWalk, made or furnished by the Trustee or any agent, broker, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Trustee. Upon information and belief, the Trustee believes that Lipman JWalk owns the Units, Lipman JWalk owns no other assets besides the Units and is not aware of any liabilities that Lipman JWalk is subject to (the "Limited Representations and Warranties"). The Limited Representations and Warranties shall survive the closing. Additionally, the Trustee is not transferring any claims of the Estate and preserves all rights as to such claims.

12. Aside from the Limited Representations and Warranties, the Estate's interest in Lipman JWalk is being sold "**AS IS**", "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free

3

and clear of any and all liens, judgment or adverse claims, of whatever kind or nature, including those asserted by Lipman Capital Trust and Lipman Capital Trust II, with such liens, judgments or claims, if any, to attach to the proceeds of sale to the same extent, with the same validity and enforceability, and in the same priority under applicable law as they existed immediately prior to the Closing. All Offerors acknowledge that they have conducted their own due diligence and investigation in connection with the Estate's interest in Lipman JWalk, including any bid therefor, and are not relying on any information provided by the Trustee or the Trustee's professionals.

13. The Trustee shall convey the Estate's interest in Lipman JWalk by delivery of such reasonably appropriate and necessary documents.

14. Nothing contained in these Bidding Procedures is intended to supersede or alter any provisions of the Bankruptcy Code or otherwise interfere with the jurisdiction of the Court. All of the terms and conditions set forth in these Bidding Procedures are subject to modification as may be directed by the Trustee or by the Court. The Trustee reserves the right to modify these Bidding Procedures at the Public Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior Orders of the Court.

15. These Bidding Procedures will be read into the record, or specifically incorporated by reference, at the Public Sale of the Estate's interest in Lipman JWalk. By making a bid for the interest in Lipman JWalk, all Offerors will be deemed to have acknowledged having read these Bidding Procedures and have agreed to be bound by them.

16. If the Trustee is unable to deliver the Estate's interest in Lipman JWalk, in accordance with these Bidding Procedures for any reason whatsoever, his only obligation will be to refund the Qualifying Deposit or Deposit, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Trustee, the Trustee's professionals, or the Estate, or any related estate under these jointly administered cases.

17. The Trustee reserves his right to withdraw the Estate's interest in Lipman JWalk from the Public Sale, either prior, or subsequent, to the Public Sale, for any reason whatsoever, as he deems necessary or appropriate.

   18. The Trustee or the Trustee's attorney shall notify the Successful Bidder whether the Public Sale is confirmed. The Court shall determine any disputes concerning the Public Sale of the Estate's interest in Lipman JWalk. By participating in the Public Sale, all Offerors consent to the exclusive jurisdiction of the Court to determine such disputes under the Debtor's pending case.

I have read these Bidding Procedures and agree to be bound by them.

By: _____   Date: _____

*M:\Documents\Company\Cases\Revolate Holdings LLC\Sale\sale of JWalk assets\BIDDING PROCEDURES 2.11.14.doc*